**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN WILLIS RICHARD,**

                                        **Petitioner,**

                    **v.**                                        **9:03-CV-920**
                                                                         **(FJS)**

**ROY GIRDICH,**

                                        **Respondent.**
_____

**APPEARANCES**                              **OF COUNSEL**

**JOHN WILLIS RICHARD**
**91-A-0169**
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
Petitioner *pro se*

**OFFICE OF THE NEW YORK**              **MICHAEL MCMARTIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Respondent

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**

**A.     Proceedings in state court**

        According to the testimony adduced at trial, on June 10, 1989, Petitioner John W.

Richard met with his friend, Dante Terrell, in the City of Albany, New York.  *See* Transcript of

Trial of John W. Richard dated December 3, 1990 ("Trial Tr.") at 746.  After the two men agreed

to steal a car, they went to the Port of Albany at around midnight and entered that location

through a hole in the fence. *See id.* at 233-34. Although they each successfully started a vehicle, they were unable to leave the area because a car was blocking the exit. *See id.* at 234-36. Around that time, Mr. Terrell noticed a security guard leave his booth. *See id.* at 236. Petitioner and Mr. Terrell hid in some weeds; and the guard did not discover them at that time. *See id.* at 236-37. After hiding for about thirty minutes, Petitioner and Mr. Terrell resumed their quest for a car; however, during that search, the guard noticed Mr. Terrell and exclaimed, "Stop or I'll shoot." *See id.* at 238-39. Mr. Terrell ran from the scene, but Petitioner chose to stay behind. *See id.* Approximately ten minutes later, Mr. Terrell heard a single gunshot, followed by three more gunshots. *See id.* at 239-40. Soon thereafter, Petitioner, who was bleeding, approached Mr. Terrell and declared, "I killed him." *See id.* at 240. Petitioner then explained that he had shot the guard "in the head and somewhere else." *See id.* at 241. Petitioner and Mr. Terrell left the area and returned to Mr. Terrell's home, where Mr. Terrell bandaged Petitioner's wound. *See id.* at 242.

After Petitioner was identified as a possible suspect in the killing, Albany Police Officer H. Warner attempted to locate Petitioner for questioning. *See id.* at 396. On the night of June 11, 1989, Officer Warner observed Petitioner as a passenger in a car, stopped that vehicle, and placed Petitioner under arrest. *See id.* at 398-401.

Dr. Jeffrey Hubbards performed the autopsy on Robert Altieri, the security guard whom Petitioner fatally shot. Dr. Hubbards testified that the victim sustained multiple gunshot wounds, one of which entered the victim's head and ultimately caused his death. *See id.* at 319-20. The record also reflects that deoxyribonucleic acid ("DNA") testing was performed on biological evidence obtained from the crime scene. *See id.* at 473-74. That testing established that

Petitioner's blood was found on the victim's jacket.  *See id.* at 497-500.

As a result of the foregoing, on June 6, 1989, an Albany County grand jury returned an indictment against Petitioner.  *See* Indictment No. 89-1242.  In the accusatory instrument, Petitioner was charged with five counts of Murder in the Second Degree, in violation of New York Penal Law § 125.25; Grand Larceny in the Fourth Degree, in violation of Penal Law § 155.30(7); Criminal Possession of a Weapon in the Third Degree, in violation of Penal Law § 265.02; and Criminal Possession of Stolen Property in the Fourth Degree, in violation of Penal Law § 165.45.[1]

On December 20, 1989, Albany County Court Judge Thomas W. Keegan presided over a suppression hearing that Petitioner requested, *see* Transcript of Suppression Hearing dated December 20, 1989 ("Suppression Tr."), after which the court scheduled a date for Petitioner's trial.  Terence Kindlon, Esq. represented Petitioner throughout those pre-trial proceedings.  However, just before his trial commenced in Albany County Court on December 3, 1990, Petitioner requested that he be allowed to represent himself at his criminal trial.  *See* Respondent's Appendix on Appeal at RA 46.  After the court made an extensive inquiry regarding that application, the court permitted Petitioner to represent himself.  *See id.* at RA 49-69.  The Court, however, directed Attorney Kindlon to serve as Petitioner's standby counsel at trial.  *See id.* at RA 69.

In his defense to the charges against him, Petitioner testified that, after Mr. Altieri discovered him and Mr. Terrell at the Port of Albany, Mr. Terrell grabbed Mr. Altieri.  *See* Trial

---

[1] Prior to instructing the jury, the County Court dismissed one of the five counts charging Petitioner with second degree murder as legally redundant.  *See* Trial Tr. at 867.

Tr. at 783.  The two men struggled, during which Petitioner refused Mr. Terrell's requests for assistance.  *See id.* at 789.  After a period of time, a gun was fired and the bullet injured Petitioner's wrist.  *See id.* at 791.  Mr. Terrell thereafter shot Mr. Altieri multiple times, *see id.* at 794, and Petitioner and Mr. Terrell eventually left the area, *see id.* at 795.[2]

At the conclusion of the trial, the jury convicted Petitioner of all charges.  *See* Trial Tr. at 1124-28.  On January 9, 1991, Petitioner appeared before Judge Keegan for sentencing.  At that proceeding, the court sentenced Petitioner to an aggregate prison term of thirty and one-half years to life imprisonment.  *See* Transcript of Sentencing dated January 9, 1991, at 10.

On October 31, 1996, the New York State Supreme Court, Appellate Division, Third Department unanimously affirmed Petitioner's conviction and sentence.  *See People v. Richard*, 232 A.D.2d 872 (3d Dep't 1996).  Petitioner sought leave to appeal that decision from the New York Court of Appeals; however, on May 12, 1997, that court denied his application.  *See People v. Richard*, 89 N.Y.2d 1099 (1997).  Petitioner, thereafter, filed a collateral challenge to his conviction pursuant to New York Criminal Procedure Law ("CPL") §§ 440.10 and 440.30, *see* Dkt. No. 16, Exhibit "A" ("CPL motion"); however, in a Decision and Order dated September 20, 2000, Albany County Court Judge Thomas A. Breslin denied that application, *see* Dkt. No. 16, Exhibit "B" ("September 2000 Decision").

---

[2] In explaining the presence of his blood on the victim's jacket, Petitioner testified that the gunshot wound he received caused him to bleed from his wrist and that, as he stepped over Mr. Altieri's body as he and Mr. Terrell left the scene, his blood fell on the victim's jacket.  *See* Trial Tr. at 795.

**B.      The current action**

On July 23, 2003, Petitioner filed, *pro se*, a habeas petition pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 1 ("Petition").  This Court thereafter directed Petitioner to file an amended petition if he wished to maintain this action, *see* Dkt. No. 3; and, on September 25, 2003, he filed that pleading, *see* Dkt. No. 6 ("Amended Petition").  Petitioner has also filed a memorandum of law in support of his amended petition.  *See* Dkt. No. 35 ("Supporting Memorandum").  Petitioner asserts numerous, overlapping claims in support of his application seeking federal habeas relief.[3] *See* Amended Petition.  After unsuccessfully moving for summary judgment on that pleading, *see* Dkt. Nos. 14, 38, on January 28, 2008, Respondent filed a response in opposition to the amended petition, *see* Dkt. No. 41.  Attached to that response is a memorandum of law in opposition to such pleading.  *See* Attachment to Dkt. No. 41.  Additionally, Respondent has provided the Court with various state-court records, including the trial transcript, relating to Petitioner's convictions.

The following constitutes the Court's disposition of the pending amended petition.[4]

---

[3] Some of the grounds that Plaintiff asserts in his amended petition are legally redundant or allege multiple legal theories in support of a particular ground for relief.  For example, Petitioner's third, fourth, fifth and ninth grounds for relief all include claims that his conviction was secured through the use of perjured testimony.  *See* Amended Petition.  Having reviewed the amended pleading, the Court finds it appropriate to address the merits of Petitioner's amended petition by reference to the legal theories that he has raised, rather than by the particular ground for relief in which he has asserted such claims.

[4] Pursuant to General Order No. 32, the Court declines to refer this matter to a magistrate judge for a report-recommendation.

## II. DISCUSSION

**A.     Standard of review**

The enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA")

brought about significant new limitations on the power of a federal court to grant habeas relief to

a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second

Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009), that

> a federal court may grant a writ of habeas corpus for a claim that
> has previously been adjudicated on the merits by a state court only
> if the adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir.
2005); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76,
88 (2d Cir. 2001).

In providing guidance concerning application of this standard, the Second Circuit has

noted that

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of
> a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but nevertheless
> comes to a different conclusion than the Court did.  [*Williams v.
> Taylor*, 529 U.S. 362,] at 405-06, 120 S. Ct. 1495 [(2000)];
> *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001). . . . [A] state
> court's decision is an "unreasonable application of" clearly
> established federal law if the state court "identifies the correct

> governing legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts" of the case before
> it.  *Williams*, 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous but, instead, whether such determination was "objectively unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 409 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 409, 120 S. Ct. 1495).  "While '[t]he precise method for distinguishing objectively unreasonable decisions from merely erroneous ones' is somewhat unclear, 'it is well-established in this Circuit that the "objectively unreasonable" standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.'"  *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (quotation omitted).  That increment, however, "'need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"  *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir. 2002) (quotation and other citations omitted).

**B.      Substance of Petitioner's claims**

*1. Ineffective assistance of counsel*[5]

The Sixth Amendment to the United States Constitution provides, in pertinent part, that,

---

[5] As noted above, Petitioner represented himself at trial.  However, Attorney Kindlon represented Petitioner before the criminal trial commenced and served as his standby counsel during the course of the trial.

"[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both (1) that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (noting that "the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).

Petitioner makes numerous allegations in support of his claim that his counsel rendered ineffective assistance.  Specifically, Petitioner claims that counsel, among other things, (1) conspired with the prosecutor to violate his "rights and the attorney-client privilege," *see* Amended Petition, Ground One; (2) failed to impeach two prosecution witnesses; (3) "improperly coerced [him] not to testify at hearing," *see id.*; (4) did not file a memorandum of law in support of his pretrial suppression motion; (5) failed to afford him the opportunity to review crime scene photographs; (6) did not "pursue" expert and lay witnesses who would have provided exculpatory testimony, *see id.*; (7) did not ensure that DNA testing was performed on available forensic evidence; (8) did not adequately cross-examine the prosecution's expert witnesses; (9) failed to seek the dismissal of the Indictment; (10) sabotaged his defense to the criminal charges, including the testimony he provided in his defense and his request to the County Court for jury instructions; (11) "call[ed] witnesses," *see id.*, Ground Two; (12) impeached witnesses; (13) coerced him into changing his theory of defense; (14) sought rulings

from the trial court which were ultimately resolved against him; (15) conspired with both the

District Attorney and the court to "sabotage[]" a motion that [he] filed pursuant to CPL § 330.30;

(16) conspired with the prosecutor to violate his attorney-client privilege and to withhold

exculpatory evidence from him; (17) failed to request jury instructions regarding accomplice

liability and New York's corroboration requirement; and (18) abused his discretion, *see id.*,

Grounds One, Two, Four, Seven, Nine and Ten.

Judge Breslin denied Petitioner's ineffective assistance claims on the merits. *See*

September 2000 Decision at 3-5. This Court must, therefore, ascertain whether that decision was

either contrary to, or represented an unreasonable application of, *Strickland* and its progeny.

Considering first Petitioner's claims challenging the pretrial actions of counsel, including

Petitioner's arguments regarding the manner in which counsel prepared for and litigated the

suppression application, as well as his claim that counsel "sabotaged" the defense by, among

other things, failing to afford Petitioner the opportunity to review crime scene photographs, this

Court, after having reviewed the underlying record, concurs with Judge Breslin's determination

that counsel provided "clearly meaningful" representation by "vigorously represent[ing]

[Petitioner] prior to trial[,] making motions, participating in hearings, and then providing advice

at trial as stand-by counsel." *See* September 2000 Decision at 4 (citation omitted).[6]

---

[6] The record establishes that, prior to trial, Judge Keegan inquired of Attorney Kindlon whether he wished to file a memorandum of law in support of the suppression motion. *See* Transcript of Pretrial Hearing dated December 29, 1989, at 3. In response, Attorney Kindlon advised the court that he and Petitioner had discussed the issue of whether counsel should submit a memorandum of law in conjunction with the suppression motion "at some considerable length," and the two ultimately agreed that no supporting memorandum should be filed. *See id.* That fact establishes that Petitioner's habeas claim challenging counsel's failure to file such a memorandum of law, *see* Amended Petition, Ground One, is without merit.

As to the portions of Petitioner's ineffective assistance claims that seek habeas relief based on standby counsel's decisions to call – or to refrain from calling – certain witnesses, the manner in which counsel questioned witnesses on direct and cross-examination, counsel's advice as to whether Petitioner should testify at the pretrial suppression hearing, and applications that counsel made prior to and during the trial that the County Court ultimately denied, this Court notes that all of these theories challenge the strategic choices of Petitioner's counsel, which are "'virtually unchallengeable'" in habeas corpus proceedings. *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (quotation omitted); *Campbell v. Greene*, 440 F. Supp. 2d 125, 150 (N.D.N.Y. 2006) (quotation and other citation omitted).  Petitioner has not established that such conduct of Attorney Kindlon was objectively unreasonable.

Additionally, Petitioner has not offered any proof establishing his claims that standby counsel (1) conspired with the District Attorney to withhold evidence from him; (2) violated the attorney-client privilege that existed between counsel and him; and (3) wrongfully persuaded him to change the theory of his defense.[7]  He has, therefore, failed to shoulder his burden of proof with respect to these claims.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (citing

---

[7] As to this last claim, the Court notes that the content of Petitioner's opening statement, wherein he described his anticipated defense to the jury, closely matched the substance of his closing argument to the jury, wherein he described what he believed the proof at trial established. Specifically, in both of those statements, Petitioner explained to the jury how (1) the security guard detained both him and Mr. Terrell after they had entered the Port of Albany with the intention of stealing a car; (2) Mr. Terrell shot the victim; (3) Petitioner volunteered to take the murder weapon from Mr. Terrell; (4) Petitioner's initial alibi for his gunshot wound was that individuals from the Hudson, New York area assaulted him; and (5) Mr. Terrell, thereafter, wrongfully accused Petitioner of the murder.  *Compare* Trial Tr. at 123-33 (Petitioner's Opening Statement) *with id*. at 966-1001 (Petitioner's Summation).  The foregoing casts significant doubt on Petitioner's claim that standby counsel "coerc[ed]" Petitioner into changing his "factual and legal defense to jury and court."  *See* Amended Petition, Ground Two.

*Walker v. Johnston*, 312 U.S. 275, 286 , 615 S. Ct. 574, 579, 85 L. Ed. 830 (1941) (stating that the "petitioner has the burden of 'sustaining his allegations by a preponderance of evidence' on collateral review")) (other citations omitted); *Celleri v. Marshall*, No. 07-CV-4114, 2009 WL 1269754, *17 (E.D.N.Y. May 6, 2009) (citation omitted); *Rosario v. Ercole*, 582 F. Supp. 2d 541, 550 (S.D.N.Y. 2008) (citation omitted).

Finally, the Court adopts the County Court's finding that, if standby counsel had requested the DNA testing that Petitioner discussed and, further, that even if such testing established that another person was present at the scene of the murder, those facts would not "create a reasonable probability that the verdict would have been more favorable to him if it had been received at trial." *See* September 2000 Decision at 5.[8]

Since Petitioner has not established that the state court's rejection of his ineffective assistance claims, *see* September 2000 Decision, is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny, he is not entitled to habeas relief on his various theories alleging ineffective assistance.

### 2. Trial court error

Petitioner asserts numerous theories in support of his claim that the County Court's actions in the criminal matter below entitle him to a new trial. Specifically, he argues that the trial court, among other things, (1) failed to hold an evidentiary hearing in conjunction with his

---

[8] There was substantial evidence of Petitioner's guilt adduced at trial; as the Appellate Division noted, in addition to Mr. Terrell's incriminating testimony, Petitioner's own sister testified that he implicated himself in the homicide, and Petitioner was found in possession of the victim's gun at the time of his arrest. *See Richard*, 232 A.D.2d at 873.

CPL motion; (2) issued rulings that were not supported by facts or law; (3) abused its discretion;

(4) allowed the prosecutor to elicit perjurious testimony; (5) precluded him from fully and fairly

defending the charges brought against him; (6) denied him the opportunity to call witnesses on

his own behalf and to present a defense to the felony murder charge; (7) failed to instruct the jury

properly on the theories of accomplice liability and New York's requirements regarding

corroboration of a witness' testimony; (8) allowed "fundamental defects" to go uncorrected in the

related criminal matter; (9) failed to follow the judicial principles of *res judicata*, *stare decisis*,

and collateral estoppel; (10) failed to discover, prevent and/or end the conspiracy that existed

between standby counsel and the prosecution to subvert his defense and violate the attorney-

client privilege that existed between him and Attorney Kindlon; (11) prevented him from calling

an expert witness in the field of reconstruction in his defense; (12) failed to "follow reasonable

probability, review of the entire record," *see* Amended Petition, Ground Twelve; (13) failed to

follow "DNA law recommendation," *see id.*; (14) failed to follow "applicable law," *see id.*; (15)

improperly considered "off record facts," *see id.*; (16) denied his recusal motion; and (17) failed

to sanction the prosecution for the misconduct in which it engaged, *see* Amended Petition,

Grounds One through Seven, Ten, Twelve; *see also* Supporting Memorandum.[9]

    "On federal habeas review of a state court criminal conviction, courts are to apply the

harmless error standard enunciated in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123

L. Ed. 2d 353 (1993), in ascertaining whether a petitioner alleging trial court error is entitled to

---

[9] Petitioner asserted allegations regarding claimed errors of the trial court in his direct
appeal, both through his counsel's appellate brief and in his *pro se* appellate brief, as well as in
his CPL motion and in an April 24, 2000 application in which he sought the recusal of the
County Court.

the relief he seeks." *Moss v. Phillips*, No. 9:03-CV-1496, 2008 WL 2080553, *10 (N.D.N.Y. May 15, 2008) (citation omitted).  A petitioner is not entitled to federal habeas relief based on a claimed error of the state court unless the error actually prejudiced his defense, i.e., the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted).

 In addressing Petitioner's claims of trial court error, the Court initially notes that, throughout his amended petition, Petitioner claims that the County Court improperly failed to conduct an evidentiary hearing relating to his CPL motion.  *See* Amended Petition, Grounds One, Two, Three, Four, Six, Seven, Twelve.  These claims, however, appear to overlook the well-settled precept that "'[f]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.'" *Babi v. LaClair*, No. 06 Civ. 14204, 2009 WL 1181615, *12 n.11 (S.D.N.Y. Apr. 30, 2009) (quoting *Diaz v. Greiner*, 110 F. Supp. 2d 225, 235 (S.D.N.Y. 2000)); *see also Dedushaj v. Graham*, No. 07 Civ. 5401, 2008 WL 4858242, *2 n.1 (S.D.N.Y. Nov. 7, 2008) ("the decision of a state court not to hold a hearing on a § 440.10 motion, even if it is erroneous, is not a basis for habeas relief").

 Next, the Court's review of the record, including the written decisions that the County Court issued denying Petitioner's post-conviction challenges, belie his claims that the trial court's rulings did not contain factual or legal support, did not comply with "applicable law," *see* Amended Petition, Ground Twelve; failed properly to adhere to the judicial doctrines discussed above or were wrongfully based on "off record facts," *see id.*  These theories, therefore, cannot afford Petitioner a basis for federal habeas relief.

 In considering Petitioner's claims that the trial court's evidentiary rulings during the

criminal proceeding below deprived him of his ability to defend himself against the criminal

charges, and reflect an abuse of that court's discretion, this Court notes that, in *King v. Phillips*,

No. 03-CV-6045, 2009 WL 891763 (E.D.N.Y. Mar. 31, 2009), the district court sagely observed

that,

> [i]n determining whether the exclusion of evidence improperly
> infringed on a defendant's right to present a complete defense,
> reviewing courts analyze: (1) whether the trial court's evidentiary
> ruling was proper; and (2) whether the excluded evidence was
> material. *See Wade v. Mantello*, 333 F.3d 51, 58-59 (2d Cir.
> 2003). Erroneously excluded evidence only reaches a level of
> unfairness if it "creates a reasonable doubt that did not otherwise
> exist." *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000) (quoting
> *United States v. Agurs*, 427 U.S. 97, 112, 96 S. Ct. 2392, 49 L. Ed.
> 2d 342 (1976)); *see also Sims v. Stinson*, 101 F. Supp. 2d 187, 194
> (S.D.N.Y. 2000) (for an evidentiary error to reach constitutional
> magnitude, "it must have been 'crucial, critical, highly significant'")
> (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)).
> Therefore, a petitioner seeking habeas relief on the basis of an
> allegedly erroneous evidentiary ruling must establish that the trial
> court's error "deprived [him] of a fundamentally fair trial." *Zarvela
> v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario v.
> Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)).

*King*, 2009 WL 891763, at *14.

In this case, Petitioner has not provided evidence that supports his claims which allege, in

substance, that the trial court prevented him from offering an adequate defense concerning the

charges against him. Additionally, as discussed more fully below, Petitioner has not

demonstrated that the District Attorney suborned perjurious testimony in the related criminal

matter. Nor has Petitioner established that the District Attorney engaged in conduct for which he

should have been sanctioned or that he conspired with standby counsel against Petitioner in the

criminal matter below. Therefore, the Court concludes that Petitioner has not met his burden of

-14-

proof concerning these allegations.  *See Whitaker*, 123 F.3d at 716; *Celleri*, 2009 WL 1269754, at *17; *Rosario*, 582 F. Supp. 2d at 550.

Considering next Petitioner's claims that the County Court's failure to charge the jury on the theories of accomplice liability and the CPL's corroboration requirements deprived him of a federal constitutional right, *see* Amended Petition, Ground Ten, the Court notes that a party seeking relief based on the failure of a court to provide an instruction faces an "especially heavy" burden because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  Since nothing before the Court establishes that the County Court's failure to provide the requested instructions violated any of Petitioner's constitutional rights, he is not entitled to federal habeas intervention on this claim.  *See id.*; *see also Huber v. Schriver*, 140 F. Supp. 2d 265, 282 (E.D.N.Y. 2001) (citation omitted).

Finally, as to Petitioner's claim that the County Court wrongfully failed to recuse itself, *see* Amended Petition, Ground Twelve, the Court notes that it is well-settled that a defendant's right to a fair trial includes a right to a trial "before a judge with no actual bias against the defendant or interest in the outcome of his particular case."  *Bracy v. Gramley*, 520 U.S. 899, 905 (1997) (citations omitted).  Additionally, the legal standard for recusal applicable to County Court judges in New York is incorporated in New York's Judiciary Law, which provides, in pertinent part, that

> [a] judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy . . . .

N.Y. Jud. L. § 14.

As with many of the claims that Petitioner asserts in his amended pleading, he has wholly

failed to provide evidence in support of his claim that the County Court was biased against him

or that the County Court was otherwise required to recuse itself from his case.  Therefore,

Petitioner is not entitled to habeas relief on his claim that the County Court wrongfully denied his

recusal application.

In sum, Petitioner has not demonstrated that any of the conduct that forms the basis of

this aspect of his amended petition constituted error on the part of the trial court.  Therefore, he

has failed to establish that the claimed errors of the trial court "'had [a] substantial and injurious

effect or influence in determining the jury's verdict.'"  *Brecht*, 507 U.S. at 637.  Thus, the Court

denies these claims.


### 3. Prosecutorial misconduct

Petitioner argues that he is entitled to a new trial due to the wide-ranging prosecutorial

misconduct which he argues occurred in the criminal matter that he challenges herein.  He

claims, among other things, that the prosecution (1) suborned perjurious testimony from two of

its witnesses; (2) prevented him from challenging the validity of the arrest warrant in the state

courts; (3) "concealed probable cause informants [sic] information on murder," *see* Amended

Petition, Ground Three; (4) engaged in the "deliberate [sic] suppression of murder informant's

reliability probable cause," *see id.*, Ground Four; (5), together with the County Court, engaged in

the "concealment/deliberate suppression of search warrant murder informant," *see id.*; (6) failed

to disclose to the defense cooperation agreements into which it had entered with two of its

witnesses; (7) allowed one or more witnesses to commit perjury before the grand jury; (8)

displayed false images to the jury; (9) violated an unspecified court mandate, *see id.*, Ground Six;

(10) failed to preserve and/or test exculpatory biological evidence; (11) improperly opposed his

CPL motion; (12) deliberately suppressed exculpatory DNA evidence; (13) conspired with

standby counsel to withhold exculpatory evidence from him; (14) presented incomplete DNA

evidence to the jury; (15) engaged in misconduct before the grand jury, prior to trial, and during

the criminal trial below; (16) conspired with standby counsel to violate his attorney-client

privilege; (17) presented "partial evidence" in violation of his due process rights, *see id.*, Ground

Nine; (18) engaged in trickery and deceit; and (19) failed to instruct the grand jury properly, *see,

generally, id.*, Grounds Three through Ten.

The Due Process Clause of the United States Constitution mandates a criminal

defendant's right to a fair trial. *See Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994) (citations

omitted).[10]  Additionally, "a conviction obtained by the knowing use of perjured testimony [on

the part of the prosecution] is fundamentally unfair, and must be set aside if there is any

reasonable likelihood that the false testimony could have affected the judgment of the jury."

*United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*,

360 U.S. 264, 269 (1959) (citations omitted).

Addressing first Petitioner's claims which allege prosecutorial misconduct before the

grand jury that ultimately indicted him, these arguments overlook the "settled jurisprudence that

any errors before the grand jury are necessarily cured by the Petitioner's subsequent conviction by

---

[10] "A right to a fair trial is a right . . . protected by the due process clause of the Fourteenth
Amendment." *Adamson v. California*, 332 U.S. 46, 53 (1947) (footnote omitted).

a petit jury on the charges contained in that accusatory instrument." *Moss*, 2008 WL 2080553, at

*7 n.11 (citing *United States v. Mechanik*, 475 U.S. 66, 70, 106 S. Ct. 938, 89 L. Ed. 2d 50

(1986)); *see also Williams v. Burge*, No. Civ. A. 9:02CV0695, 2005 WL 2179423, *6 (N.D.N.Y.

Aug. 15, 2005) (citations omitted) (Report-Recommendation), *adopted* 2005 WL 5740225

(N.D.N.Y. Dec. 7, 2005).  The Court, therefore, denies Petitioner's claims which allege, among

other things, that (1) witnesses provided perjurious testimony before the grand jury, *see* Amended

Petition, Ground Five; (2) the District Attorney engaged in misconduct at those proceedings, *see*

*id.*, Ground Nine; (3) the prosecutor failed to instruct that body properly, *see id.*, Ground Ten;

and (4) "fundamental defects" occurred before the grand jury, *see id.*, Ground Eleven.

Petitioner also alleges misconduct on the part of the prosecution – and other state officials

– relating to the issuance of both the search and arrest warrants.  *See, e.g.,* Amended Petition,

Grounds Three, Four.  Such claims are necessarily based on Petitioner's Fourth Amendment right

to be free from unconstitutional searches and seizures.[11]

Where the State has provided a petitioner with an opportunity to litigate his Fourth

Amendment claims fully and fairly, a federal district court may not, thereafter, grant federal

habeas corpus relief to that party based on a claimed violation of that constitutional right.  *See*

*Morales v. Walsh*, No. 02-CV-6045, 2003 WL 23185770, *15 (E.D.N.Y. Oct. 30, 2003) (quoting

*Stone v. Powell*, 428 U.S. 465, 482, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976)) (other citations

---

[11] "A claim that the police lacked probable cause to arrest an individual is one rooted in the Fourth Amendment to the United States Constitution." *Jones v. Greene*, No. 9:04-CV-0400, 2007 WL 4246330, *5 n.10 (N.D.N.Y. Nov. 28, 2007) (citations omitted).

omitted).[12]  Nothing before this Court suggests that Petitioner was precluded from challenging

the propriety of any of the items that the police seized, or the lawfulness of his arrest, in the

related criminal matter.  To the contrary, as noted above, Judge Keegan conducted a suppression

hearing, *see* Suppression Tr., at which defense counsel "extensively questioned the

[prosecution's] witnesses."  *See* September 2000 Decision at 4.  Petitioner has presented no

evidence that demonstrates that the County Court failed to conduct a reasoned method of inquiry

into the relevant questions of fact and law concerning Petitioner's suppression application.

Therefore, the Court denies Petitioner's Fourth Amendment claims, including those challenging

the legality of his arrest.  *See, e.g., Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *McPherson

v. Greiner*, No. 02 Civ. 2726, 2003 WL 22405449, *16 (S.D.N.Y. Oct. 22, 2003).

　　　　Turning to Petitioner's claims which allege that the prosecutor suborned perjurious

testimony, *see* Amended Petition, Grounds Three, Four, Five, Nine, in support of these claims.

Petitioner alleges that (1) the prosecutor allowed Officer Warner and Detective McNally to

commit perjury at the suppression hearing when those witnesses testified about the basis on

which they possessed probable cause to arrest him; (2) the District Attorney knowingly allowed

Gloria Mallory to commit perjury when she falsely testified that she provided a "citizen's tip" to

the police regarding Petitioner because she feared for the safety of her daughter; and (3) Mr.

Terrell perjured himself when he suggested that he was not indicted for his role in the death of

the victim because he told the truth about the homicide.  *See, e.g.,* Supporting Memorandum at

---

[12] In *Stone*, the Supreme Court determined that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted).

10, 27.

To prevail on this aspect of his petition, Petitioner must, as a threshold matter, prove that the witnesses referenced above in fact committed perjury. *See Toland v. Walsh*, No. 04-CV-0773, 2008 WL 65583, *22 (N.D.N.Y. Jan. 4, 2008) (citations omitted). The Court, therefore, considers the proof before the Court regarding Petitioner's claim of perjury as to each of these four witnesses.

As to Officer Warner, he testified at the suppression hearing that, on June 11, 1989, he and Officer K. Wilcox were directed to apprehend Petitioner. *See* Suppression Tr. at 7. In discussing the basis for that directive, Officer Warner testified that a female had "signed [a] crime report" regarding Petitioner, in which she alleged that Petitioner had committed an assault on another female. *See id.* Defense counsel's cross-examination of Officer Warner about that testimony, as well as the circumstances surrounding the surveillance that law enforcement agents were conducting relating to Petitioner, *see id.* at 21-24, failed to reveal any perjury on the part of Officer Warner. Moreover, Officer Warner's pretrial testimony was entirely consistent with his trial testimony. *See* Trial Tr. at 395-97, 408. Therefore, the Court finds that this aspect of Petitioner's claim is without merit.

Detective McNally testified at the suppression hearing that he first became involved in the criminal matter involving Petitioner when he was assigned to take pedigree information from Petitioner at the Albany Public Safety Building in conjunction with an arrest report regarding Petitioner. *See* Suppression Tr. at 33-34, 39. This testimony was entirely consistent with Detective McNally's trial testimony, *see* Trial Tr. at 521-23; and Petitioner elected to refrain from cross-examining Detective McNally at trial, *see id.* at 523. There is no evidence before this

Court that Detective McNally committed perjury.

Turning to Petitioner's allegations regarding prosecution witnesses, Ms. Mallory and Mr. Terrell, Petitioner argues that, at the time Ms. Mallory initially contacted the police about him, she was incarcerated and that she provided law enforcement agents with information which eventually led to his arrest only after she had entered into a "deal" with the District Attorney that resulted in her release from jail. *See* Supporting Memorandum at 10. Petitioner seems to claim that Ms. Mallory did not testify about that agreement and, instead, falsely claimed that she provided information regarding Petitioner because she feared for the safety of her daughter. *See id.* at 27. With respect to Mr. Terrell, Petitioner similarly asserts that, although the District Attorney entered into a "deal" with Mr. Terrell to provide testimony before the grand jury that incriminated Petitioner, *see id.*, Mr. Terrell did not disclose that fact during his testimony and, instead, falsely claimed that he was not charged with the victim's murder because he truthfully informed law enforcement agents that Petitioner had committed the homicide. *See id.* Petitioner further asserts that, notwithstanding the fact that the defense specifically requested that the prosecution disclose the existence of any cooperation agreements with its witnesses, the District Attorney wrongfully failed to inform the defense of the fact that both Mr. Terrell and Ms. Mallory had entered into the above-described agreements. *See id.* at 10-11.

The prosecution is clearly required to disclose to the defense cooperation agreements into which it has entered in pursuing a criminal matter against the defendant. *See Giglio v. United States*, 405 U.S. 150, 151-53 (1972). In denying this aspect of Petitioner's CPL motion, the County Court determined that Petitioner's claims regarding Ms. Mallory and Mr. Terrell were "unsupported, speculative and conclusory," and "made solely by defendant and . . . otherwise

-21-

without any support in the record." *See* September 2000 Decision at 7.  After having reviewed the state-court record, this Court endorses the County Court's finding that Petitioner failed to prove the existence of either of the claimed cooperation agreements.  Since there is no evidence that these witnesses entered into such agreements with the District Attorney, Petitioner has, therefore, failed to demonstrate that the prosecution wrongfully withheld information regarding these claimed agreements from him.  Petitioner has also failed to establish that either of these witnesses provided perjurious testimony in the criminal matter below.

The Court similarly finds that Petitioner has offered no proof to substantiate his claims that the prosecution (1) used "false images/theories at trial," *see* Amended Petition, Ground Five; (2) abused its discretion, *see id.*; (3) violated a pretrial mandate of the court, *see id.*, Ground Six; (4) improperly filed opposition papers regarding a collateral challenge that Petitioner filed concerning his conviction, *see id.*, Ground Seven; (5) entered into a conspiracy with standby counsel, *see id.*, Grounds Seven, Nine; (6) violated his due process right by presenting "partial evidence" at trial, *see id.*, Ground Nine; or (7) engaged in trickery or deceit, *see id.*  He has, therefore, failed to meet his burden of proof as to any of these claims.  *See Whitacker*, 123 F.3d at 716; *Celleri*, 2009 WL 1269754, at *17; *Rosario*, 582 F. Supp. 2d at 550.

Turning to Petitioner's claims regarding DNA evidence, in his amended pleading, he claims that the prosecution wrongfully failed to (1) subject certain biological evidence to forensic testing and (2) provide that evidence to the defense.  *See* Amended Petition, Ground Six (Petitioner claiming that prosecutor engaged in misconduct by failing to provide "untested exculpatory DNA samples" to the defense); *see id.*, Ground Seven (prosecution engaged in misconduct by allowing "untested exculpatory DNA samples" to exist); *see id.*, Ground Eight

(Petitioner arguing that he is entitled to federal habeas relief because of the existence of "untested DNA samples").  Petitioner further asserts that the prosecution and/or other state actors wrongfully failed to preserve that DNA evidence.  *See id.*, Ground Eight.

The Supreme Court has observed that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Nevertheless, the prosecution does not have a duty to "preserve all material that might be of conceivable evidentiary significance in a particular prosecution."  *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) (citation omitted).

Since the biological evidence that forms the basis of these habeas claims was ***not*** subjected to forensic testing – and was, therefore, not necessarily exculpatory – Petitioner is not entitled to habeas intervention on his claims that the District Attorney did not preserve such potentially exculpatory evidence.  *See id.*  Moreover, "[t]here is no constitutional right to DNA testing in a criminal trial."  *Dart v. Bennett*, 98-CV-1637, slip op. at 25 (N.D.N.Y. Feb. 17, 2004) (quotation and citation omitted).  A habeas claim that alleges that DNA testing was not properly conducted is, therefore, premised on an alleged violation of state law, which cannot form a basis for federal habeas intervention.  *See id.*, slip op. at 25-26 (citations omitted).  Furthermore, because the forensic evidence about which Petitioner now complains was not subject to DNA testing, his claims that the prosecutor necessarily suppressed ***exculpatory*** evidence, *see, e.g.,* Amended Petition, Grounds Six, Seven, Eight, is necessarily rooted in speculation.  Courts "cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation."  *Gaffney v. Conway*, No. 9:08-CV-0302, 2009 WL 1706910, *10 (N.D.N.Y. June 17, 2009)

(citing *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995)) (other citation omitted).

For habeas relief to be granted based on a claim of prosecutorial misconduct, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  After having reviewed Petitioner's claims alleging such misconduct in conjunction with the state-court record, the Court concludes that Petitioner has not demonstrated that the County Court's denial of his claims alleging prosecutorial misconduct, *see* September 2000 Decision at 7, is either contrary to, or represents an unreasonable application of, the above-noted clearly established Supreme Court precedent. Therefore, the Court denies these claims for relief.

### 4. Claimed misconduct of New York State courts

Finally, Petitioner claims that both the Appellate Division and New York's Court of Appeals have, among other things, (1) abused their respective discretion in addressing his claims; (2) violated his constitutional rights; (3) prevented him from adequately appealing his conviction; and (4) "manipulated denials of federal questions presented to them." *See* Amended Petition, Grounds Thirteen, Fourteen.

After having reviewed the state-court record, including the decisions that both the Appellate Division and New York's Court of Appeals issued relating to the criminal matter involving Petitioner, the Court finds that Petitioner has failed to establish that the actions of

either of those courts violated any of his federal constitutional rights or, otherwise, engaged in

conduct that entitles him to federal habeas relief.  Therefore, the Court denies these final claims

for relief.

**C.      Other relief that Petitioner seeks**

After all of the briefs relating to Petitioner's amended petition were filed herein, Petitioner

filed applications in this action (1) "To Amend Discovery Motion Pursuant to Rule 15(b) and

Rule 6(a) (b)," *see* Dkt. No. 63; and (2) objecting to the "'docket sheet' classification" which the

Clerk used in docketing Petitioner's motion to amend his discovery motion, *see* Dkt. No. 65.

In light of the Court's rulings discussed more fully above, the Court denies these

remaining applications as moot.

**D.      Certificate of Appealability**

The Court notes that 28 U.S.C. § 2253 provides, in pertinent part, that, "[u]nless a circuit

justice or judge issues a certificate of appealability, an appeal may not be taken to the court of

appeals from – (A) the final order in a habeas corpus proceeding in which the detention

complained of arises out of process issued by a State court . . . ."  28 U.S.C. § 2253(c)(1)(A).[13]  A

court may only issue a Certificate of Appealability "if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Since Petitioner has

failed to make such a showing, the Court declines to issue any Certificate of Appealability in this

---

[13] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may
not proceed "unless a circuit justice or a circuit or district judge issues a certificate of
appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b).

matter.

### III. CONCLUSION

After carefully reviewing the state-court record, the parties' submissions, and the applicable law, and for the reasons discussed herein, the Court hereby

**ORDERS** that Petitioner's amended petition is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that Petitioner's motion "To Amend Discovery Motion Pursuant to Rule 15(b) and Rule 6(a) (b)" is **DENIED AS MOOT**; and the Court further

**ORDERS** that Petitioner's objection to the manner in which the Clerk of the Court docketed his motion to amend his discovery motion is **DENIED AS MOOT**; and the Court further

**ORDERS** that a Certificate of Appealability shall not be issued in this case; and the Court further

**ORDERS** that the Clerk of the Court shall return any state-court records that were not filed in this action to the Attorney General at the conclusion of these proceedings, including any appeal of this Memorandum-Decision and Order that any party files; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 10, 2009
         Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge